STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:     (619) 235-5306
Facsimile:      (815) 377-8419
e-mail:         mzevin@aol.com

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JOHN T. SHAW; KENNETH COKE; and RAYMOND RYDMAN, on behalf of themselves and all others similarly situated,

              Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., WELLS FARGO BANK, NA and CITIMORTGAGE, INC.,

              Defendants.

Case No. 13CV1295 JLS BLM

**CLASS ACTION**

**COMBINED RESPONSE TO DEFENDANTS CITIMORTAGE, INC.'S AND WELLS FARGO BANK, NA'S MOTIONS TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE TO DISMISS AND/OR STRIKE CLASS ALLEGATIONS**

DATE:      July 31, 2014
TIME:       1:30 p.m.
JUDGE:    Honorable Janis L. Sammartino
CTRM:     4A (Schwartz)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................... 1

II.   ARGUMENT .................................................................. 3

      A.   Plaintiffs' Second Amended Complaint Provides
           All Required Information............................................... 3

      B.   Standing – Each Plaintiff's Claims Are Exclusive
           to the Defendant to Whom Their Short Sale Relates............................ 4

      C.   Plaintiffs Properly Individualized Facts as to Each
           Defendant and Adequately Described the
           Relevant Transactions ............................................... 4

      D.   Plaintiffs' Second Amended Complaint Sufficiently
           Pleads Class Allegations ............................................ 5

           1.   The Class Definition Is Sufficiently Definite
                to Be Ascertainable.............................................. 7

           2.   Plaintiffs Have Sufficiently Pleaded Numerosity.................... 12

           3.   Plaintiffs Have Sufficiently Pleaded Commonality ................. 13

           4.   Plaintiffs Have Sufficiently Pleaded Adequacy
                and Typicality ................................................ 14

           5.   Plaintiffs Have Sufficiently Pleaded Rule 23(B)(3)'s
                Requirements .............................................. 15

III.  CONCLUSION ............................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance to End Repression v. Rochford*,
  565 F.2d 975 (7th Cir. 1977) .............................................................................. 7

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ........................................................................ 11, 15

*Beaudry v. TeleCheck Servs., Inc.*,
  579 F.3d 702 (6th Cir. 2009) ............................................................................ 11

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012) ........................................................................ 10

*Bueche v. Fid. Nat. Mgmt. Servs., LLC*,
  2014 WL 2468601 (E.D. Cal. June 2, 2014) ........................................................ 9

*Caufield v. EMC Mortgage Corp.*,
  803 F. Supp. 2d 519 (S.D.W. Va. 2011) .............................................................. 9

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011) ............................................................... 5

*Connelly v. Hilton Grant Vacations Co., LLC*,
  2012 WL 2129364 (S.D. Cal. June 11, 2012) ...................................................... 6

*Cross v. Nat'l Trust Life Ins. Co.*,
  553 F.2d 1026 (6th Cir. 1977) .......................................................................... 12

*Garrison v. Asotin Cnty.*,
  251 F.R.D. 566 (E.D. Wash. 2008) .................................................................... 12

*Gill-Samuel v. Nova Biomedical Corp.*,
  2014 WL 1661496 (S.D. Fla. Apr. 9, 2014) ......................................................... 6

*Harris v. Mexican Specialty Foods, Inc.*,
  564 F.3d 1301 (11th Cir. 2009) ........................................................................ 11

*Hernandez v. Alexander*,
  152 F.R.D. 192 (D. Nev. 1993) ...................................................................... 12

*Holloway v. Full Spectrum Lending*,
  2007 WL 7698843 (C.D. Cal. June 26, 2007) .................................................. 15

*Holtzman v. Caplice*,
  2008 WL 2168762 (N.D. Ill. May 23, 2008) ................................................... 12

*In re Jackson Lockdown/MCO Cases*,
  568 F. Supp. 869 (E.D. Mich. 1983) .................................................................. 9

*Janti v. Encore Capital Grp., Inc.*,
  2010 WL 3058260 (S.D. Cal. Aug. 3, 2010) ...................................................... 6

*Khorrami v. Lexmark Int'l Inc.*,
  2007 WL 8031909 (C.D. Cal. Sept. 13, 2007) ................................................... 6

*Lau v. Arrow Fin. Servs., LLC*,
  245 F.R.D. 620 (N.D. Ill. 2007) ......................................................................... 7

*Llewellyn v. Allstate Home Loans, Inc.*,
  711 F.3d 1173 (10th Cir. 2013) ........................................................................ 11

*Lubin v. Sybedon Corp.*,
  688 F. Supp. 1425 (S.D. Cal. 1988) .................................................................. 12

*Lymburner v. U.S. Fin. Funds, Inc.*,
  263 F.R.D. 534 (N.D. Cal. 2010) ...................................................................... 12

*Mack v. Equable Ascent Fin., L.L.C.*,
  748 F.3d 663 (5th Cir. 2014) ............................................................................ 11

*Meyer v. Putnam Int'l Voyager Fund*,
  220 F.R.D. 127 (D. Mass. 2004) ....................................................................... 11

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ............................................................................ 12

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
  268 F.R.D. 652 (S.D. Cal. 2010) .................................................................... 7, 9

*Parko v. Shell Oil Co.*,
  739 F.3d 1083 (7th Cir. 2014) .......................................................................... 14

iii

*Rodman v. Safeway, Inc.*,
    2014 WL 988992 (N.D. Cal. Mar. 10, 2014) .................................... 14

*Rosales v. FitFlop USA, LLC*,
    882 F. Supp. 2d 1168 (S.D. Cal. 2012) ................................. 6

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ................................. 11

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009),
    *aff'd*, 606 F.3d 391 (7th Cir. 2010) ................................. 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    293 F.R.D. 287 (E.D.N.Y. 2013) ................................. 7, 10

*Tourgeman v. Collins Fin. Servs., Inc.*,
    2009 WL 6527757 (S.D. Cal. Aug. 6, 2009) .................................... 6

*Tourgeman v. Collins Fin. Servs., Inc.*,
    2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) .................................... 7

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................. 13

*Walker v. Calusa Invs., LLC*,
    244 F.R.D. 502 (S.D. Ind. 2007) ................................. 15

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ................................. 13, 14

*Wilson v. Toussie*,
    2008 WL 905903 (E.D.N.Y. March 31, 2008) ................................. 10

### Statutes, Rules & Regulations

15 U.S.C.
    § 1681 ................................................. *passim*
    § 1681s-2(A)(8)(E)(iv) ................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Federal Rules of Civil Procedure

Rule 8..................................................................................................1, 2
Rule 8(a) .............................................................................................1, 3
Rule 12...............................................................................................3, 6
Rule 23.........................................................................................5, 7, 12
Rule 23(a)(1)...................................................................................12, 13
Rule 23(a)(2)........................................................................................13
Rule 23(b)(2) .......................................................................................15
Rule 23(b)(3) .......................................................................................15

# I.     **INTRODUCTION**

Plaintiffs submit this Combined Response to Defendants Citimortage, Inc.'s ("Citi") and Wells Fargo Bank, NA's ("Wells") (collectively the "Furnishers") Motions to Dismiss Second Amended Complaint or, in the Alternative to Dismiss and/or Strike Class Allegations (the "Motions").  At this point, over a year after the initial Complaint was filed, the instant Motions (the fifth and sixth motions to dismiss in this matter) are tantamount to abuse of process and vexatious multiplication of the proceedings.   The Furnishers' repeated protests of the sufficiency of Plaintiffs' notice pleading has become farcical and now border on bad faith.  This Court has already ruled on what allegations Plaintiffs' were required to add in order to comply with Rule 8 and those allegations are now part of Plaintiffs' Second Amended Complaint ("SAC").   Therefore, Plaintiffs are in compliance with both Rule 8 and the stated wishes of this Court.

In its Order on the Furnishers' Motions to Dismiss Plaintiffs' First Amended Complaint ("the Order"), this Court found that whether Plaintiffs provided adequate facts regarding the Furnishers and the short sales was "a close issue" but ultimately decided that Plaintiffs needed to "provide at least some factual allegations as to the underlying mortgages and short sales to satisfy Rule 8(a)."[1]  The Court advised that this additional information "would assist Defendants in cross-referencing their records and responding to the allegations."[2]   Plaintiffs provided the additional information in their SAC.  Tellingly, the Furnishers do not claim, and have never claimed, that they have insufficient information to locate their records or to respond to the allegations – which is the only consideration the Court found compelling.  Nonetheless the Furnishers continue to burden Plaintiffs and this Court and continue to needlessly delay these proceedings.  Their goal appears to be to strong

---

[1]  Order Granting Wels Fargo Bank, N.A.'s and Citimortgage's Motions to Dismiss First Amended Complaint, ECF No. 55, pp. 10-11.

[2]  *Id*.

arm Plaintiffs into complying with some mythical pleading standard of their own creation.   That standard is not the law.   More importantly, this Court has specifically held what additional information would make Plaintiffs' Complaint compliant and the SAC provides that information.

Despite the clear and concise language of the Order, the Furnishers continue to claim they are entitled to more than the ordered information that "would assist the Furnishers in cross-referencing their records and responding to the allegations" and more than "factual allegations as to the underlying mortgages and short sales." Contrary to the Order, the Furnishers curiously demand that the Complaint advise how each Plaintiff discovered the inaccurate reporting, when each Plaintiff disputed their credit information with Experian and how each Plaintiff described the problem.[3]  They go so far as to allege that Plaintiffs are required, at the Complaint stage, to advise whether Experian was the only CRA that reported the short sales as foreclosures.[4]  It is the Furnishers who report the accounts and their status to the CRAs.   Why should Plaintiffs' Complaint advise them if and how the account information they reported was conveyed by "other CRAs," CRAs who are not parties to this lawsuit?   The request is absurd on its face and even more so in light of the explicit categories of information this Court has already found would make Plaintiffs' Complaint conforming.   That information has been provided and the Order does not even remotely suggest that Plaintiffs need advise the Furnishers on these additional matters.   Oddly, the Furnishers still demand this information knowing it is well outside the purview of the unambiguous Order and well outside of what Rule 8 requires.

In addition to their redundant attacks on claim specificity and the descriptions

---

[3]   CitiMortgage Inc.'s Motion to Dismiss Second Amended Complaint or, in the Alternative to Dismiss and/or Strike Class Allegations, ECF No. 58-1 at p. 7 (Joined by Wells Fargo Bank, N.A., via ECF No. 60).

[4]   *Id.*

2

of the short sales, the Furnishers now complain about class requirements for the very first time despite the case's year-long pendency and despite four prior motions to dismiss which were silent on this issue.  To, for a sixth time, demand to be notified via notice pleading of details that the Furnishers know full well and probably better than Plaintiffs themselves, of information well beyond what the Court has already ordered, of information which will be flushed out during discovery and of information which, at worst, can be cured by an amended complaint appears an abuse of the process afforded by Rule 12.  Moreover, to initiate, for the first time – a year after the initial Complaint and despite substantial prior briefing under Rule 12 – a challenge to Plaintiffs' class allegations constitutes a vexatious multiplication of these proceedings.

The nature, extent and timing of these curious efforts and the motions to stay the case that accompany each of them makes the Furnishers' goal of prolonged delay transparent.

## II.   ARGUMENT

### A.    Plaintiffs' Second Amended Complaint Provides All Required Information

The Furnishers admit the redundancy of and thus the frivolousness of their current Motions when they confirm that "[t]he pleading deficiencies identified in this Motion were raised in CitiMortgage's motion to dismiss the original Complaint and again in its motion dismiss the FAC . . . ."[5]  Notably, the Court previously ruled and found that "Plaintiffs must provide at least some factual allegations as to the underlying mortgages and short sales to and satisfy Rule 8(a)" and that the FAC "tends not to differentiate between actions attributed to CitiMortgage as opposed to Wells Fargo."[6]   In adherence thereto the SAC specifies which Plaintiff had mortgage accounts/short sales involving which  Furnisher; it provides the street

---

[5]  *Id*., at 9.

[6]  Order, at 11.

address for each property, the date of each mortgage and the last four (4) digits of each account number assigned by the target Furnisher; it provides the date of each short sale; and it advises of each Furnisher's short sale approval, of each Furnisher's release of lien and the effect thereof.[7]  Indeed, Plaintiffs have provided the ordered distinction between the Furnishers and more than "some factual allegations as to the underlying mortgages and short sales."

This Court having spoken and Plaintiffs having complied, the Furnishers' demand for superfluous additional information is over-reaching.

**B.    Standing – Each Plaintiff's Claims Are Exclusive to the Defendant to Whom Their Short Sale Relates**

The Furnishers assert that claims by a Plaintiff that did not have a short sale related to a particular Furnisher should be dismissed as to that Furnisher.[8]  No such claims exist.  They can't exist.  The SAC clearly identifies which Furnisher(s) each named Plaintiff's short sale relates to.  It axiomatic that a Plaintiff has not brought claims for misreporting a short sale against a Furnisher with which Plaintiff did not have a loan.  Even if not axiomatic, it is clear from the SAC.  The SAC specifies not only the target Furnisher(s) for each Plaintiff but also the last four digits of the account number with that Furnisher and other details of the short sale event.[9]  This is a feigned issue.

**C.    Plaintiffs Properly Individualized Facts as to Each Defendant and Adequately Described the Relevant Transactions**

As detailed above, the SAC provides the detail the Court found lacking and indeed provides detail sufficient to satisfy the Court's stated goal of providing

---

[7]  SAC, ¶¶ 58-61.

[8]  Citimortgage Inc.'s Motion to Dismiss Second Amended Complaint or, in the Alternative to Dismiss and/or Strike Class Allegations, ECF No. 58-1 at pp. 5-6 (Joined by Wells Fargo Bank, N.A., via ECF No. 60).

[9]  *Id.*

4

enough information to "assist Defendants in cross-referencing their records and responding to the allegations."[10]  The SAC provides individualization of claims per Furnisher and also provides all available relevant information on the underlying transactions.   The Furnishers now far overreach, claiming entitlement to information well beyond that which was requested by the Court and well beyond that which is required under the law.  The absurdity of the Furnishers' contention that Plaintiffs need advise them, at the Complaint stage, of the specifics of their reporting to and their reinvestigations with all CRAs underscores the notion that the Furnishers' have motives exclusive of ensuring the adequacy of Plaintiffs' initial pleading and exclusive of being on adequate notice of Plaintiffs' claims.  As to the instant motions, these contentions fail because the SAC provides all required information and the Furnishers' current demand for yet additional information – including information it already knows and knows best – is extraneous.

**D.     Plaintiffs' Second Amended Complaint Sufficiently Pleads Class Allegations**

The Furnishers have asked this Court to take the extraordinary measure of ruling on class certification before they have even answered the Second Amended Complaint and prior to any discovery.  While courts have occasionally accepted such invitations by defendants, it is certainly the exception rather than the rule.[11] This Court, in particular, has repeatedly declined such requests, finding that an attempt to "resolve class claims at the pleading stage" is improper because "Rule 23

---

[10]  Order, at 11.

[11]  *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases).

is the better vehicle to test the propriety of class certification."[12]   Based on this Court's guidance, the Plaintiffs respectfully requests that the Court deny the Furnishers' request to rule on class certification prior to discovery, briefing, and a hearing on class certification.

To the extent the Court wishes to analyze class certification at this pleading stage, Judge Whelan recently noted the applicable standard:

> [S]o long as class action allegations "address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent," the court should find that the allegations are sufficient to survive a motion to strike.[13]

District courts are endowed with broad discretion in this area[14] and act with sound "discretion to deny a motion to strike and allow plaintiffs time to conduct class discovery when 'the defendant ha[s] not yet answered the complaint, discovery ha[s] not yet commenced, and no motion to certify a class ha[s] been filed.'"[15]

The logic for courts' reluctance to decide class certification under Rule 12 is in full view here.  The Plaintiffs have alleged systematic, widespread, and willful Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") violations in the way that the Furnishers report short sales and handle disputes regarding such inaccurate reporting.  Plaintiffs do not merely allege a handful of inaccurate reports based on anomalous mistakes.  Rather, they allege that the Furnishers' systems for

---

[12]   *Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012) (Sammartino, J.); *Janti v. Encore Capital Grp., Inc.*, 2010 WL 3058260, at *3 (S.D. Cal. Aug. 3, 2010) (Sammartino, J.); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527757, at *9 (S.D. Cal. Aug. 6, 2009) (Sammartino, J.); *accord Khorrami v. Lexmark Int'l Inc.*, 2007 WL 8031909, at *3 (C.D. Cal. Sept. 13, 2007) (collecting cases).

[13]   *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012).

[14]   *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (internal citations omitted).

[15]   *Gill-Samuel v. Nova Biomedical Corp.*, 2014 WL 1661496, at *6 (S.D. Fla. Apr. 9, 2014) (discussing *Vinole*, 571 F.3d at 941)).

reporting short sales are broken, affecting all or a large portion of consumers who engaged in short sales.  Plaintiffs should be permitted to take discovery about matters such as the way Furnishers reported and coded short sales, and how they processed disputes regarding reporting of short sales.  Only then will the parties and the Court be sufficiently informed to decide whether the alleged wrongdoing was the type of pervasive practice suited for class treatment and meets Rule 23's specific requirements.

### 1. The Class Definition Is Sufficiently Definite to Be Ascertainable

Courts have read a requirement into Rule 23 that the class definition must be ascertainable, based upon sufficiently definite and objective criteria.[16]  Whether a class definition is sufficiently definite is determined on a case-by-case basis.[17]  It is not a demanding requirement, "but is designed only to prevent the certification of a class whose membership is truly indeterminable."[18]

An identifiable class exists if its members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct.[19]  Thus, the touchstone is the ability to determine class membership without delving into subjective factors such as the would-be class member's state of mind.[20]

The only class definition challenged by the Furnishers' is Class No. 4.

All consumers domiciled or residing in the United States who disputed the accuracy of their short sale related accounts with Furnishers

---

[16]  *Tourgeman v. Collins Fin. Servs., Inc.*, 2011 WL 5025152, at *4 (S.D. Cal. Oct. 21, 2011) (Sammartino, J.).

[17]  *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

[18]  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 299 (E.D.N.Y. 2013) (internal citation and quotation marks omitted).

[19]  *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 659 (S.D. Cal. 2010) (Sammartino, J.).

[20]  *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007).

through Experian or any other consumer reporting agency and for whom the Furnishers have inaccurately, incompletely or misleadingly reported to any consumer reporting agency the results of a short sale by which the Furnishers released their liens on the real estate and accepted less than the amount owed on the debt, including, but not limited to, by reporting the mortgage or mortgage related account in such a way that it would appear to the subscriber or user of a consumer report that the consumer lost the real estate through foreclosure, that the consumer had filed bankruptcy and/or that the consumer had a currently delinquent account.[21]

Furnishers argue that this definition is indefinite because it provides no time limitation, requires subjective individualized inquiries, includes persons who have not been injured, and, by way of footnote, that the definition results in an impermissible "fail-safe" class.

Furnishers' argument that the class definition is based on subjective criteria is flatly incorrect. The class definition is entirely objective. In order to be a class member, a person must: (1) be a consumer domiciled in the United States; (2) have disputed the accuracy of a short sale related account with a consumer reporting agency; and (3) Furnishers must have reported the results of a short sale in such a way that it would appear to the subscriber or user of a consumer report that the consumer (a) lost the real estate through foreclosure, (b) the consumer had filed for bankruptcy, or (c) that the consumer had a currently delinquent account. Each of these requirements can be determined through objective information, much of which is likely in Furnishers' possession. At a minimum, Plaintiffs' should be permitted to engage in discovery to determine what information the Furnishers have before being foreclosed on ascertainability grounds.

The Furnishers next argue that the class includes individuals who do not have claims against the Furnishers because those individuals' inaccuracies may have been corrected by the Furnishers when the individuals made disputes to the credit

---

[21] SAC, at ¶¶ 5 & 83.

reporting agencies.  It should be apparent from both the class definition and the SAC, read as a whole,[22] that the class is limited to individuals who made disputes and for whom the Furnishers failed to correct their inaccurate reporting.  This is reflected in Paragraph 144 of the SAC: "Despite their knowledge that the information being reported on Plaintiffs' and Class No. 4's credit files was inaccurate, the Furnishers verified to Experian that the false and derogatory information was accurate . . . ."  To the extent that the class definition does not make clear that class membership requires inaccurate reporting *after* a consumer made a dispute, Plaintiffs will make such clarification when they move for class certification.[23]  This change will not expand or materially alter the class alleged in the SAC.

Furnishers also claim that the class includes people who made disputes to credit reporting agencies that were never passed along to the Furnishers. Considering that credit reporting agencies have a statutory duty to forward disputes to Furnishers, this presumably would be a rare instance indeed.  However, in order to avoid the possibility of a small handful of individuals whose claims were not passed from CRAs to Furnishers being included in the class, Plaintiffs can simply make this clarification when they move for class certification.

The Furnishers next claim that class membership depends on a determination of the merits, focusing on the use of the term "inaccurately" in the class definition.

---

[22]  S*ee In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010) (Sammartino, J.) ("further statements narrowing the classes may be gleaned from the Complaint"); *Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 526 (S.D.W. Va. 2011) ("[W]hen determining who is a member of the proposed class, the complaint must be read as a whole." *Id.* (internal citation omitted)); *In re Jackson Lockdown/MCO Cases*, 568 F. Supp. 869, 883 (E.D. Mich. 1983) (same).

[23]  *See, e.g., Bueche v. Fid. Nat. Mgmt. Servs., LLC*, 2014 WL 2468601, at *2-*3 (E.D. Cal. June 2, 2014) (a court is not bound by the class definition proposed in the complaint and may modify the definition of a proposed class at a later stage) (collecting cases).

9

From this single word, Furnishers incorrectly conclude that liability must be established before class membership can be ascertained.   The FCRA requires furnishers, upon investigation, to correct inaccurate information.[24]   The reporting of a short sale in any of the three ways identified in the definition (i.e. as a bankruptcy, foreclosure, or delinquent account) is necessarily inaccurate.   There is no necessary liability determination required.   Whether a would-be-class member meets the third prong of the definition requires that the report meet one of the three objective criteria.   That these criteria necessarily define an inaccurate report does not render them subjective or fail-safe.[25]

Furnishers also argue that the Court would need to make individual inquires about class members to determine whether they are a member of the class.   Even assuming *arguendo* that this is true, this does not render the definition unascertainable.[26]   That a member will need to individually substantiate that she meets the class definition does not render a class unascertainable.[27]

The Furnishers claim that, whether any alleged inaccurate reporting of short sales was "willful" under the FCRA will require individual inquires regarding the

---

[24]  15 U.S.C. § 1681s-2(A)(8)(E)(iv).

[25]  Plaintiffs acknowledge that the class definition suggests that the list of three types of inaccurate reporting is not exclusive, using the phrase "including but not limited to."   In order to clarify class membership criteria, Plaintiffs intend to strike this phrase from the class that it will seek to certify in this matter.

[26]  *Shady Grove*, 293 F.R.D. at 299, n.7 ("Membership in such a class would still require an inquiry into certain individual characteristics of each putative member's situation and transaction, and yet the *Wilson* court would 'easily' have concluded that the class was ascertainable." *Id*. (discussing *Wilson v. Toussie*, 2008 WL 905903, at *1 (E.D.N.Y. March 31, 2008)).

[27]  *See, e.g.*, *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 476 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) (finding ascertainably where members use photographs to prove membership); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417-18 (N.D. Ill. 2012) (finding ascertainability where person who disposed of gift card could submit an affidavit in a post-trial claims process).

circumstances of consumers' disputes and the Furnishers' processing of the same.[28] Not true.  As discussed above, Plaintiffs allege that the Furnishers' systematically misreported short sales as foreclosures, bankruptcies, and/or delinquent accounts, and failed to correct those errors when consumers brought them to the Furnishers' attention.  Plaintiffs plan to develop evidence through discovery that Furnishers' willful violations of the FCRA occurred systematically, not just with respect to a single individual.  Accordingly, class proof will be used to show that the Furnishers recklessly and consistently failed in their FCRA duty to investigate disputes and to provide accurate information to correct inaccuracies.

Finally, Furnishers argue that the definition fails because it does not identify a specific temporal scope.  As noted above, the only claim concerning Class No. 4 is for violation of § 1681s-2.  A violation for § 1681s-2 must be brought within two-years of the date of discovery of the violation.[29]  Accordingly, the class definition is confined to persons who disputed the reporting of their short sale within two years of the filing of this case.[30]  To the extent this is not clear from the proposed class definition itself, Plaintiffs will clarify this temporal limitation when

---

[28]  As used in the FCRA, "willful" includes both knowing and reckless violations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58, 127 S. Ct. 2201, 2208-09, 167 L. Ed. 2d 1045 (2007).  "A defendant acts in reckless disregard if the defendant's action 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'"  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 711, n.1 (9th Cir. 2010) (quoting *Safeco*, 551 U.S. at 69).  Claims for willful violation under 1681n do not require proof of actual damages.  *Id*. at 711; *See also Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 703 (6th Cir. 2009); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1179 (10th Cir. 2013); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009).

[29]  *Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665 (5th Cir. 2014) (citing 15 U.S.C. § 1681p).

[30]  *Meyer v. Putnam Int'l Voyager Fund*, 220 F.R.D. 127, 129 (D. Mass. 2004) (recognizing class definition is not read in isolation but must be "considered in context-including the relevant case law").

moving for class certification under Rule 23.

### 2.    Plaintiffs Have Sufficiently Pleaded Numerosity

The word "numerosity" is a misnomer for what Rule 23(a)(1) really requires: that joinder of parties be impracticable.[31]   The range of how many would-be class members are required to be sufficiently numerous to render joinder impracticable differs dramatically on a case-by-case basis and has been found as low as seven persons.[32]

Courts have identified various "factors to be considered in deciding" whether joinder is impracticable:

> 1) the geographical diversity of the plaintiffs; 2) the nature of the action; 3) the size of the individual claims; and 4) whether it would be impossible to obtain personal jurisdiction over some of the members of the class.[33]

The numerosity determination is a fact-specific case-by-case inquiry[34] and the Court is permitted to use common sense in deciding this requirement.[35]

Due to the fact-intensive analysis, numerosity challenges are particularly inappropriate for motions on the pleadings.[36]  The full extent of the persons affected is the precise kind of information that is squarely within Furnishers' possession and is not readily accessible outside of discovery mechanisms.  It would substantially undermine the class action mechanism to permit defendants to secret away the

---

[31]   *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Rule 23(a)(1) is not satisfied by a magic number. *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 539 (N.D. Cal. 2010).

[32]   *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1030 (6th Cir. 1977).

[33]   *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1458 (S.D. Cal. 1988) (Enright, J.) (internal citation omitted).

[34]   *Hernandez v. Alexander*, 152 F.R.D. 192, 194 (D. Nev. 1993) (internal citation omitted).

[35]   *Garrison v. Asotin Cnty.*, 251 F.R.D. 566, 569 (E.D. Wash. 2008).

[36]   *Holtzman v. Caplice*, 2008 WL 2168762, at *2-*3 (N.D. Ill. May 23, 2008).

12

1    necessary factual information to meet numerosity and then defeat class action

2    allegations at the pleadings stage before plaintiffs are permitted to obtain this

3    information through discovery.

4          At this stage, Plaintiffs allege that there are thousands of members of the

5    proposed nationwide class[37] and have alleged that the FCRA violations by

6    Furnishers are systemic and widespread.  Moreover, the class definition includes

7    persons throughout the nation, not geographically confined to California, which

8    favors a finding of impracticability of joinder.  Given the number of mortgage loans

9    each of the Furnishers likely made, the number of short sales of those loans, and the

10   allegations of systematically inaccurate reporting of such short sales, common sense

11   suggests that there are sufficiently numerous affected persons to satisfy numerosity.

12   Consequently, Plaintiffs have sufficiently addressed the numerosity element of Rule

13   23(a)(1).

14                **3.      Plaintiffs Have Sufficiently Pleaded Commonality**

15         Furnishers' challenge to commonality is that Plaintiffs only allege a single

16   common question and that extensive individualized inquiries are necessary.  The

17   latter argument has been dispelled above, and by the Complaint's allegations of

18   widespread, systematic practices affecting all class members.  The other argument

19   is not a proper basis to find a lack of commonality, particularly at this procedural

20   juncture.  "So long as there is 'even a single common question,' a would-be class

21   can satisfy the commonality requirement of Rule 23(a)(2)."[38]

22         Furnishers rely on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

23   (2011), for the proposition that commonality is not satisfied by alleging a violation

24   of the same legal provision.  However, as *Dukes* makes clear, commonality is

25   satisfied where the claims are based on "a common contention – for example, the

26   ───────────────────

[37] SAC at ¶ 84.

27

[38] *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (internal

28   citation omitted).

assertion of discriminatory bias on the part of the same supervisor."[39]  If resolution of that common contention "will resolve an issue that is central to the validity of each of the claims in one stroke[,]" then commonality is satisfied.[40]  That is precisely the case here.

The common contention here is whether "Furnishers violated the FCRA by knowingly and willfully reporting the results of a consumer short sale inaccurately, incompletely, or misleadingly to [CRAs]."  As indicated by the class definition, the inaccuracy must be by Furnishers reporting the results of a short sale in such a way that it would appear to the subscriber or user of a consumer report that the consumer (a) lost the real estate through foreclosure, (b) the consumer had filed for bankruptcy, or (c) that the consumer had a currently delinquent account.  Thus, the common determination of whether Furnishers knowingly or willfully reported short sales as one of the three categories and whether that reporting violates the FCRA will resolve an issue central to the validity of each claim in a single stroke. Therefore, commonality is satisfied.

### 4.   Plaintiffs Have Sufficiently Pleaded Adequacy and Typicality

Furnishers' arguments against adequacy and typicality are simply a rehashing of their arguments that the class is overly broad as defined. Furnishers argue simply that the Plaintiffs are atypical and inadequate because there are persons within the class definition who have suffered "no 'actual damages.'"  To the extent this is true, a class definition will often, and is permitted to, include persons who have not been injured.[41]  The argument that the class includes persons who suffered no "actual damages" is equally unavailing. Plaintiffs' claims are for willful violations of the

---

[39] *Id.*

[40] *Id.*

[41] *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *16 (N.D. Cal. Mar. 10, 2014) (collecting cases); *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (Posner, J.).

14

FCRA.[42]  Plaintiffs do not need to prove any actual damages for claims of willful violations of the FCRA.[43]

### 5.     Plaintiffs Have Sufficiently Pleaded Rule 23(b)(3)'s Requirements

Lastly,[44] Furnishers argue that Plaintiffs fail to sufficiently plead predominance and superiority requirements. The assault on predominance remains a misguided belief that issues of liability need to be decided by individualized inquiries. As discussed at length above, this is not so. Based on the objective nature of the criteria in the class definition, there is no need to hold mini-trials for each class member. Further, because the class seeks only statutory damages under the FCRA individualize inquiry on damages will be unnecessary.[45]

Furnisher's attack on superiority is equally ill-founded.  Numerous courts have recognized that FCRA statutory damages classes are particularly well suited for class treatment and superior over the alternative of numerous individual suits.[46]

## III.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Furnishers' motions be denied.

DATED: July 17, 2014                STANLEY LAW GROUP


_/s/ Matthew J. Zevin_____
MATTHEW J. ZEVIN

---

[42]  SAC, at ¶ 145.

[43]  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 711 (9th Cir. 2010).

[44]  Furnishers also contest Plaintiffs' Rule 23(b)(2) class allegations.  After consideration, Plaintiffs hereby abandon claims under Rule 23(b)(2).

[45]  *Walker v. Calusa Invs., LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007) (McKinney, C.J.).

[46]  *Id.*; *Holloway v. Full Spectrum Lending*, 2007 WL 7698843, at *8-*9 (C.D. Cal. June 26, 2007) (In "the specific context of the FCRA, federal courts have regularly recognize the superiority of class litigation in suits for statutory damages[.]").

15

225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:   (619) 235-5306
Facsimile:    (815) 377-8419
e-mail:        mzevin@aol.com

DMJ LAW PC
DEYAR JAMIL, Illinois SBN: 6257093
(admitted *pro hac vice*)
4050 N. Lincoln Avenue
Chicago, IL  60618
Telephone:   (773) 450-6111
e-mail:        deyar.jamil.law@gmail.com

CENTO LAW, LLC
G. JOHN CENTO, Indiana SBN: 21571-49
(admitted *pro hac vice*)
The Emelie Building
334 North Senate Avenue
Indianapolis, IN  46204
Telephone:   (317) 908-0678
e-mail:        cento@centolaw.com

PAVLACK LAW LLC
ERIC S. PAVLACK, Indiana SBN: 21773-49
(admitted *pro hac vice*)
6507 Ferguson Street, Suite 201
Indianapolis, IN  46220
Telephone:   (317) 251-1100
Facsimile:    (317) 252-0352
e-mail:        Eric@PavlackLawFirm.com

Attorneys for Plaintiffs

16

## PROOF OF SERVICE

*John T. Shaw, et al. v. Experian Information Solutions, Inc., et al.*
CASE NO: 13CV1295JLS(BLM)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

That on July 17, 2014, I served the following document(s) entitled: **COMBINED RESPONSE TO DEFENDANTS CITIMORTAGE, INC.'S AND WELLS FARGO BANK, NA'S MOTIONS TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE TO DISMISS AND/OR STRIKE CLASS ALLEGATIONS** on ALL INTERESTED PARTIES in this action:

**SEE ATTACHED SERVICE LIST**

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT COURIER**: I caused the above-referenced document(s) to be contained in an overnight envelope and to be deposited in a **Federal Express/Overnite Express** box located at 225 Broadway, San Diego, California, for delivery to the above address(es).

☒ **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 17, 2014, at San Diego, California.

  */s/ Matthew J. Zevin*
 MATTHEW J. ZEVIN