1  STANLEY LAW GROUP
   MATTHEW J. ZEVIN, SBN: 170736
2  10021 Willow Creek Road, Suite 200
   San Diego, CA 92131
3  Telephone: (619) 235-5306
   Facsimile: (815) 377-8419
4  e-mail: mzevin@aol.com

5  Attorneys for Plaintiffs
   [Additional Counsel on Signature Page]
6

7

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10 | JOHN T. SHAW; KENNETH COKE; | CASE NO. 13CV1295 JLS BLM
   | and RAYMOND RYDMAN, on |
11 | behalf of themselves and all others | **CLASS ACTION**
   | similarly situated, |
12 | | **REPLY BRIEF IN SUPPORT OF**
   | Plaintiffs, | **PLAINTIFFS' MOTION TO**
13 | | **ENFORCE SETTLEMENT**
   | v. | **AGREEMENTS AGAINST WELLS**
14 | | **FARGO BANK, NA**
   | EXPERIAN INFORMATION |
15 | SOLUTIONS, INC., and WELLS | Date:   July 16, 2015
   | FARGO BANK, NA, | Time:   1:30 p.m.
16 | | Judge:  Honorable Janis L. Sammartino
   | Defendants. | Ctrm:   4A (Schwartz)
17 |
   | | **Special briefing schedule ordered**
18 |

19

20

21

22

23

24

25

26

27

28

1    Wells Fargo is asking the Court to suspend common sense and to interpret
2  the statement contained in its April 29, 2015 email that "Wells Fargo *has*
3  *accepted Plaintiffs' settlement demand* as outlined in your 4/27/15 email below"
4  as something other than an acceptance of an offer to form a contract.  Exhibit 3
5  to Berkely Decl. (emphasis added); *Fishman v. LaSalle Nat. Bank*, 247 F.3d 300,
6  302 (1st Cir. 2001) ("Common sense is as much a part of contract interpretation
7  as is the dictionary or the arsenal of canons." (citation omitted)). Wells Fargo's
8  legal gymnastics aside, the law in this Circuit tells us that this Court can and
9  should summarily enforce the settlement agreement that Wells Fargo
10  unequivocally accepted with the statement above.

11    Plaintiffs and Wells Fargo *successfully* negotiated the settlement of three
12  individual claims brought by three individual plaintiffs. It is undisputed that, *at*
13  *no time* during the negotiation of these claims did Wells Fargo expressly state,
14  imply, mention, or even suggest that it expected Plaintiffs to release claims that
15  their wives may or may not have against Wells Fargo.[1] It is indisputable that
16  Wells Fargo never said a single word about settling the potential claims of
17  Plaintiffs' spouses *until after* the parties had already agreed on settlement
18  amounts for each of Plaintiffs' claims. Wells Fargo's argument that releases of
19  their spouses' (non-parties to this action who were not even represented by
20  Plaintiffs' counsel during the negotiations) potential claims (claims which were
21  never discussed during negotiations) were somehow material terms of the
22  settlements with Plaintiffs is absolutely absurd.

23  /././
24  /././
25  /././
26

---

27  [1] In fact, as to Mrs. Rydman and Mrs. Coke there are no claims to release since
neither Mrs. Rydman nor Mrs. Coke ever made a dispute through a consumer
28  reporting agency which would have triggered Wells Fargo's FCRA obligations.
The only spouse who has a potential claim against Wells Fargo is Mrs. Shaw.

1
2

**I.   The Court Can Summarily Enforce the Parties' Settlement Agreement Because It Included All Material Terms.**

3
4
5
6
7
8

Wells Fargo is simply incorrect that this Court cannot summarily enforce the parties' settlement agreement. *See*, *e.g.*, *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274678, at *8 (C.D. Cal. Nov. 13, 2012) (Under federal law, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it.") (collecting cases). To be enforced, a settlement agreement must meet two requirements:

9
10
11

First, it must be a complete agreement. This requires that the parties have reached agreement on all material terms. Second, the parties "must have *either* agreed to the terms of the settlement or authorized their respective counsel to settle the dispute."

12

*Id.* at *8-9 (citations omitted).

13
14
15
16
17
18
19
20

Wells Fargo does not appear to dispute that the second requirement is satisfied. Instead, it claims that the first element is not met because the parties purportedly did not reach a complete agreement on all material terms. In particular, Wells Fargo claims that, because the parties did not agree on the terms of a release, they did not agree on all material terms. Wells Fargo is correct that courts have found a release to be a material term. What Well Fargo fails to recognize or conveniently ignores is that the Plaintiffs' agreement to dismiss their claims with prejudice is the legal equivalent of a release.

21
22
23

**A dismissal with prejudice has the force and effect of a full release. Clearly a dismissal with prejudice is a full release, and the released party would have the identical rights as a party that is released by a formal settlement agreement.**

24
25
26
27
28

*Cargill Ferrous Int'l Div. of Cargill, Inc. v. M/V Princess Margherita,* 2001 WL 1426678, at *1 (E.D. La. Nov. 13, 2001) (emphasis added) (cited with approval by *Gladstein v. Aurora Loan Servs., LLC*, 2014 WL 2514713, at *3 (N.D. Ga. May 7) *report and recommendation adopted*, 2014 WL 2515206 (N.D. Ga. June 3, 2014)); *see also*, *Luke v. Signal Oil & Gas Co.,* 523 F.2d 1190, 1191 (5th

1  Cir.1975) (same); *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 734 F. Supp. 1470,

2  1477 (N.D. Ill. 1990) (same).

3      Plaintiffs' counsel's April 27, 2015 email specifically indicates, "Plaintiffs

4  will dismiss their claims with prejudice, with the proposed class members'

5  claims dismissed without prejudice."[2] When Wells Fargo's counsel on April 29

6  "accepted Plaintiffs' settlement demand as outlined in [Plaintiffs' counsels']

7  4/27/15 email" the parties agreed to a full release.[3,4]

## II.   Wells Fargo Outwardly Manifested Its Intent to be Bound by the Settlement Terms; Its Subjective Intent Is Irrelevant.

10      Wells Fargo incredibly claims that it did not *intend* to be bound despite

11  stating that it "accepted Plaintiffs' settlement demand," and therefore the Court

12  cannot summarily enforce the parties' agreement. It is true that the question of

13  whether parties intended only to be bound upon execution of a signed agreement

14  is a factual issue. *See*, *e.g.*, *Callie v. Near*, 829 F.2d 888, 890–91 (9th Cir. 1987).

15  However, contrary to Wells Fargo's suggestion, neither *Callie* nor any other case

16  it cites holds that intent cannot be determined summarily.

17

18  [2] Notably, in its otherwise extensive description of the parties' settlement discussions, Wells Fargo makes no mention of Plaintiffs' offer to dismiss their claims with prejudice.

19  [3] Plaintiffs acknowledge that in their opening Memorandum of Points and Authorities [Doc. No. 95-1], they mistakenly identified April 28th as the date of

20  the acceptance call from Wells Fargo's counsel and agree that April 29th was the date of both the phone call and email accepting Plaintiffs' settlement offer. This

21  date mix up was caused by Plaintiffs' counsel overlooking the April 29th email when he was reviewing the history of counsels' settlement negotiations. Contrary

22  to Wells Fargo's suggestion in its Response, Plaintiffs never would have deliberately withheld this email. Rather, it is the single best piece of evidence in

23  support of Plaintiffs' motion.
[4] Wells Fargo repeatedly states that its April 29 acceptance email indicates that a

24  signed "Formal Release" would be required, and otherwise uses the phrase

25  "Formal Release" throughout its Response as though it were a defined term. Indeed, Wells Fargo uses the terms "Formal Release" 24 times in the text of its

26  Response. To be clear, the email never mentions the word "release," and

27  certainly never referenced a "Formal Release," as suggested by Wells Fargo. Wells Fargo cannot make a "Formal Release" essential simply by repeating it *ad*

28  *nauseam*.

Plaintiffs' Reply Brief In Support of Motion to Enforce Settlement       Case No. 13CV1295 JLS BLM

"Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *Liberty Media Holdings, LLC v. FF Magnat Ltd.*, 2012 WL 3255044, at *2 (D. Nev. Aug. 7, 2012) (citation omitted). Familiar rules of contract formation tell us that a party's subjective intent to contract is irrelevant, and that courts look only to outward manifestations of intent. *See, e.g., Democracy Council of California v. WRN Ltd., PLC*, 471 F. App'x 802, 803 (9th Cir. 2012) ("Contract formation is governed by objective manifestations, ***not subjective intent of any individual involved***. The test is what the outward manifestations of consent would lead a reasonable person to believe." (quoting *Roth v. Malson,* 67 Cal. App. 4th 552, 557, 79 Cal. Rptr. 2d 226 (1998); (emphasis added)); *NipponKoa Ins. Co. v. CEVA Logistics U.S. Inc.*, 2013 WL 140233, at *4 (C.D. Cal. Jan. 7, 2013) (citing *In re Quantification Settlement Agreement Cases,* 201 Cal. App. 4th 758, 798 (Cal. App. 3d 2011), for the "general principal that 'contract formation is governed by objective manifestations, not the subjective intent of any individual involved.'").

Courts treat a motion to enforce a settlement agreement like a motion for summary judgment. *Schaffer*, 2012 WL 10274678, at *9 (citing *In re City Equities Anaheim, Ltd.,* 22 F.3d 954, 958–59 (9th Cir. 1994)). Here, there are absolutely no material issues regarding any facts that are relevant to whether a contract was formed. The parties do not dispute that on April 27th, Plaintiffs counsel sent an email to Wells Fargo's counsel offering to dismiss their claims with prejudice in exchange for the payment of specified sums and the removal of mortgage tradelines from their credit reports. Nor do the parties dispute that on April 29th Wells Fargo's counsel conveyed acceptance of these terms, first by phone then in an email stating, "Wells Fargo has accepted Plaintiffs' settlement demand as outlined in your 4/27/15 email below. We will begin drafting settlement agreements for your review and approval." These undisputed /././

1  objective manifestations of intent unequivocally demonstrate Wells Fargo's
2  intent to be bound by the terms in the April 27 email.

3      The fact that Wells Fargo indicated it would provide formal settlement
4  agreements does nothing to alter this conclusion. Instead, it simply reflects the
5  way that lawyers settle cases around the country every day – first with an
6  agreement on the essential terms, followed by formalization in a written
7  agreement. As set forth at length in the cases cited in Plaintiffs' Memorandum of
8  Points and Authorities, courts routinely enforce settlement agreements reached
9  through email, orally, or through letter correspondence, even when the parties
10 specifically contemplate reducing such agreement to a more formal writing. *See,*
11 *e.g., In re Hurtado*, 2015 WL 2399665, *8 (Bankr. E.D. Cal. May 18, 2015)
12 ("The fact that the parties contemplated memorialization does not necessarily
13 suggest that the discussion between the parties was a preliminary negotiation that
14 did not create an enforceable contract. The question is whether the objective
15 intent of the parties as expressed in the instrument is that of a final agreement.").
16 If we were to accept Wells Fargo's arguments, it would mean that a litigant
17 would always have an "out" after agreeing to a settlement simply by saying they
18 subjectively did not intend to be bound.[5]

19     It is noteworthy that Wells Fargo argues that the Court cannot summarily
20 decide whether the parties entered into a settlement agreement without an
21 evidentiary hearing, but Wells Fargo does not request such a hearing. Although
22 Plaintiffs disagree that an evidentiary hearing is necessary, they request that the
23 Court set such a hearing if it determines that it cannot summarily enforce the
24 agreement.

25
26 [5] Suppose that, days after Well Fargo's April 29th acceptance email, Plaintiffs
    decided they did not want to settle and told Wells Fargo there was no deal. Are
27 we seriously supposed to believe that Wells Fargo would quietly walk away
    since no formal settlement papers were signed? Of course not. Wells Fargo
28 would insist that the parties' email exchange created a binding obligation,
    because it did.

## III.   Wells Fargo Fails to Distinguish Plaintiffs' Cases.

Wells Fargo next attempts unsuccessfully to distinguish the cases Plaintiffs cited in their opening Memorandum.

Wells Fargo first attacks Plaintiffs' citation to *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab.*, 2015 WL 1778481, at *3 (N.D. Cal. Apr. 17, 2015). Plaintiffs cited this case for two distinct points, both of which are completely applicable. First, *Aki* sets forth the applicable standard for enforcing settlement agreements. Second, *Aki* tells us what is obvious – the law does not allow someone to rescind a contract simply because they no longer like the terms to which they agreed. Plaintiffs acknowledge that, factually, the circumstances of the settlement agreement in *Aki* were different than in the present case, but that in no way diminishes the applicability of the two principals for which it is cited.

Turning next to *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307, 87 Cal. Rptr. 2d 822 (1999) (citation omitted), Wells Fargo suggests that this case actually supports its position, accusing the Plaintiffs of "ignor[ing] the Court of Appeal's confirmation *as here*, that 'where the writing shows it was not intended to be binding until a formal written contract is executed, there is no contract." [Response, ECF No. 109, p. 9]. Wells Fargo's treatment of this case is completely misplaced, if not misleading. The court in *Harris* found the plaintiff had alleged facts sufficient to state a claim for breach of a settlement contract, where the plaintiff alleged the parties had agreed to a letter stating:

> I am writing to confirm the essential terms of the settlement we reached today. The present defendants in this matter will pay [Harris] a total of $205,000 in exchange for a general release of, and complete protection against, all claims and potential claims against them arising from or related to the Dennis A. Harris Irrevocable Inter Vivos Trust Agreement. This office will prepare the initial draft of the settlement documents, and you should inform the [c]ourt that the matter has been resolved as soon as is reasonably practicable.

*Id.* at 303.

The court in *Harris* held that the parties' plan to reduce their agreement to writing did not negate the enforceability of the letter outlining the "essential terms of the settlement." *Id.* at 308–09.  In reaching its conclusion, the court in *Harris* distinguished cases such as *Beck v. American Health Group Internat., Inc.*, 211 Cal. App. 3d 1555, 1562, 260 Cal. Rptr. 237 (1989), where the writing at issue provided, "It is a pleasure to draft the outline of ***our future agreement***," outlined the terms, and then stated, "When we have a draft, we will discuss it and hopefully shall have a completed contract and operating unit in the very near future." *Id*. at 1563. The court in *Beck* found that there was no agreement based on the "manifest [ ] intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel." *Id*. The present case is *exactly* like *Harris*, which found there was a settlement contract, and completely different from *Beck*, which found there was not.

Wells Fargo's attempt to distinguish *In re Hurtado*, 2015 WL 2399665 (Bankr. E.D. Cal. May 18, 2015), is similarly misguided. Wells Fargo claims that Hurtado's acceptance email "did not reference a formal settlement agreement whatsoever." [Response, ECF No. 109, p. 10]. What Wells Fargo fails to mention is that the offer email specifically contemplated that there would be a "finalization of the settlement agreement terms" that the email outlined. *Id*. at *4. In other words, the facts in *Hurtado* are identical to those here, and *Hurtado*'s holding that the parties had a binding contract notwithstanding their intent to reduce the terms to a formal agreement is equally applicable here.

## IV.  Wells Fargo's Reliance on Claim Preclusion Cases Is Misplaced.

In its final argument, Wells Fargo's cites *Mueller v. J.C. Penney Co.*, 173 Cal. App. 3d 713 (1985) and *Yan Sui v. 2176 Pac. Homeowners Ass'n*, 2012 WL 6632758, at *6 (C.D. Cal. Aug. 30, 2012), in an attempt to justify its insistence

7

that the Plaintiffs' spouses' claims be released in any settlement agreement. *Mueller* and *Yan Sui* have absolutely nothing to do with the issue before the Court. Both of those cases involved *res judicata* challenges to claims by plaintiffs whose spouses had previously brought similar suits. Neither had anything to do with settlement agreements or releases. At most, Wells Fargo could argue that these cases preclude any lawsuits by the Plaintiffs' wives once the Plaintiffs dismiss their claims with prejudice, as agreed in the parties' settlement agreement. The Plaintiffs' wives presumably would contest any such assertion, considering that claims under the FCRA belong to individual, distinct consumers. *See* 15 U.S.C. § 1681a(c) ("The term "consumer" means an individual"); § 1681n & § 1681o (creating private rights of action for a "consumer"). However, that issue is not before the Court, and the Court should reject Wells Fargo's attempt to inject it here.

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

/././

8

## V.    Conclusion

For the foregoing additional reasons, Plaintiffs, John T. Shaw, Kenneth Coke, and Raymond Rydman, respectfully request that the Court summarily enforce the terms of each of their settlement agreements with Wells Fargo Bank, NA, as set forth in Eric Pavlack's email of April 27, 2015, and for all other just and proper relief.[6]

DATED: July 2, 2015

STANLEY LAW GROUP
MATTHEW J. ZEVIN

By:   /s/ Matthew J. Zevin
        MATTHEW J. ZEVIN
10021 Willow Creek Road, Suite 200
San Diego, CA 92131
Telephone: (619) 235-5306
Facsimile: (815) 377-8419
e-mail: mzevin@aol.com

CENTO LAW, LLC
G. JOHN CENTO, Indiana SBN: 21571-49
(admitted pro hac vice)
The Emelie Building
334 North Senate Avenue
Indianapolis, IN 46204
Telephone: (317) 908-0678
e-mail: cento@centolaw.com

PAVLACK LAW LLC
ERIC S. PAVLACK, Indiana SBN: 21773-49
(admitted pro hac vice)
255 North Alabama St., Ste. 301
Indianapolis, IN 46204
Telephone: (317) 251-1100
Facsimile: (317) 252-0352
e-mail: Eric@PavlackLawFirm.com

Attorneys for Plaintiffs

---

[6] Wells Fargo argues that the Court cannot enforce the parties' settlement agreement because Plaintiffs redacted the settlement amounts from the April 27th email. Plaintiffs redacted these amounts out of concern for all of the parties' privacy, and because the amounts are completely irrelevant to the issue of enforceability. If the Court would like to know the amounts, the Plaintiffs would be happy to provide an unredacted copy of the email either *in camera* or by filing it unredacted.

Plaintiffs' Reply Brief In Support of Motion to Enforce Settlement        Case No. 13CV1295 JLS BLM